**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MONDIS TECHNOLOGY LTD., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:11-cv-378-JRG |
| | § | |
| CHIMEI INNOLUX CORP., et al., | § | |
|     Defendants. | § | |
| | § | |
| | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are Plaintiff Mondis Technology Ltd. ("Mondis") and Defendants Chimei-Innolux Corp. and Innolux Corp. (collectively, "Innolux") briefing regarding various issues related to supplemental damages and ongoing royalties.   (Dkt. Nos. 20-23, 31, 32, 35-38.) Also before the Court is Defendants' Motion to Stay Action in Light of Parallel International Trade Commission Investigation.   (Dkt. No. 34.)

As provided for in its September 30, 2011 Order, the Court awards Mondis supplemental damages in the amount of $1,971,810 in damages for its 2011 supplemental sales that were not considered by the jury.  (Dkt. No. 11.)   The Court now awards prejudgment interest on these supplemental damages in the amount of $73,725.00.   Also, as provided for in the September 30, 2011 Order, the Court awards damages at an ongoing royalty, as a percentage of total product revenue, at the rate of 1.50% for computer monitors and 0.75% for televisions sold after June 30, 2011, for the remaining life of the adjudicated infringed claims of the asserted patents.  This ongoing royalty shall apply to "Infringing Products" that are directly or indirectly shipped into the United States by Innolux, or on behalf of Innolux by any third party, or for which Innolux would otherwise be liable as a direct or indirect infringer.  For the purpose of determining ongoing

royalties and with respect to the infringed claims, Infringing Products are herein defined as those computer monitors and televisions that were accused at trial, and those that are not colorably different from the computer monitors and televisions that were accused at trial.   The Ongoing Royalties obligation shall run for the remaining life of the adjudicated infringed claims of the patents-in-suit and shall bind Innolux and any persons or companies who are in active concert or participation with Innolux, as well as the successors and assigns of Innolux's computer monitor and/or television business.   Finally, the Court stays execution as to this and the Court's September 30, 2011 order, contingent upon Innolux's posting of a supersedeas bond in compliance with Local Rule CV-62.   Such bond must unequivocally establish that the bonding company will make payment in full in U.S. dollars to Mondis for the amount of supplemental damages as a condition of the supersedeas.

## I.       FACTS & PROCEDURAL POSTURE

On June 27, 2011, following a trial on the merits, a duly empanelled jury in this Court returned a verdict awarding Mondis $15 million in damages for infringement by Innolux of Mondis' patents.   Case No. 2:07-cv-565, Dkt. No. 586.[1]   A final judgment was subsequently entered in Case No. 2:07-cv-565 in accordance with the jury's verdict of infringement.   Case No. 2:07-cv-565, Dkt. No. 666.   The final judgment specified "[t]he full $15,560,847.00 recovery [including prejudgment interest] is to be payable to Mondis Technology, Ltd. in U.S. Dollars in the United States…"   *Id*. at 3.   The Court then severed Mondis' motion for ongoing royalties and supplemental damages for Innolux's 2011 infringing sales.   *Id.* at 4.

---

[1]  At the time that the jury entered its verdict, the only remaining co-defendants in the case were Chimei-Innolux Corp. ("CMI"), a Taiwanese entity, and Innolux Corp. ("IC"), a U.S. entity.   The verdict refers to these co-defendants collectively as "Innolux."   *See* Case No. 2:07-cv-565, Dkt. No. 586.

On September 30, 2011, the Court ordered Innolux to pay Mondis $1,971,810 in damages for Innolux's 2011 supplemental sales (that were not before of the jury) and also set ongoing royalty rates of 1.50% for computer monitors and 0.75% for televisions.   Case No. 2:11-cv-378, Dkt. No. 11.   Innolux moved for reconsideration of that order, and on February 27, 2012, the Court denied Innolux's motion for reconsideration.   Case No. 2:11-cv-378, Dkt. No. 25.   On that same day, the Court held a hearing in which both parties presented proposed final judgments.   To better understand the parties' positions on the disputed issues, the Court ordered supplemental briefing on their various areas of disagreement.

The parties dispute the following issues related to the final judgment: (a) the definition of the royalty base for ongoing royalties; (b) the timing and frequency of reports and payments; (c) whether prejudgment interest should be assessed on the supplemental damages; (d) whether a portion of the judgment must be withheld due to Taiwanese tax laws; (e) whether the ongoing royalties extend to Innolux's successors and assigns; (f) whether Mondis is entitled to additional discovery related to a possible transfer of assets from Innolux to Hon Hai Precision Ltd. ("Hon Hai"); and (g) whether the supplemental damages award and the ongoing royalty award should be stayed pending appeal.

Additionally, on March 14, 2012, Innolux filed a motion seeking a stay of this action because Mondis recently initiated a Section 337 investigation at the International Trade Commission ("ITC") against Innolux.   (Dkt. No. 34.)   The parties dispute whether such circumstances warrant a mandatory stay of this case according to 28 U.S.C. § 1659(a).

## II.   DISPUTED PROVISIONS OF THE FINAL JUDGMENT

### a.  Definition of Royalty Base

For purposes of the final judgment, the parties agree that ongoing royalty rates should apply to products sold by Innolux that are directly or indirectly shipped into the United States by Innolux or on behalf of Innolux, and which qualify as "Infringing Products."   However, the parties dispute what constitutes an "Infringing Product."   Innolux submits that the final judgment should be narrowly tailored to encompass only those products that were identified in the Infringement Contentions previously served in this case and specifically found by the jury verdict to be infringing.   (Dkt. No. 32, at 3) ("Those computer monitors and televisions that were accused at trial, and those that are essentially the same as those monitors and televisions accused at trial with respect to the infringed claims.")   Mondis seeks a broader definition, which would include "all computer monitors and televisions that comply with or implement any VESA, DDC2B, EDID, Plug-and-Play, or DDC/DI standard, or the Microsoft Windows Logo program."   (Dkt. No. 32, Exh. 18.)

Consistent with the jury verdict in this case, the Court finds that "Infringing Products" should be defined as those computer monitors and televisions that were actually accused at trial, and those that are not colorably different from those monitors and televisions accused at trial with respect to the infringed claims.   The Court declines to adopt Mondis' proposal because the asserted claims require specific combinations of hardware (processors, communication controllers, and memory) and software (programmed capabilities and stored data) that may, or may not, be required to implement various VESA or other standards now and in the future. Neither the evidence of record nor the jury's verdict supports a finding that Mondis has proven that all implementations of various VESA or other standards would necessarily infringe the asserted

4

patents.   Additionally, the Court modifies Innolux's proposed language to recite "not colorably different from" rather than "essentially the same as" those monitors and televisions accused at trial.   Such language has previously been utilized in at least two prohibitive injunction cases. *See, e.g., TiVo, Inc. v. EchoStar Comm. Corp.*, 446 F. Supp. 2d 664, 667 (E.D. Tex. 2006), *aff'd in part, rev'd in part on other grounds and remanded*, 516 F.3d 1290; *ActiveVideo Networks, Inc. v. Verizon Comm. Inc.*, 2:10-cv-248, 2011 WL 5878365, at *9 (E.D. Va. Nov. 23, 2011).

Accordingly, for purposes of establishing a basis for determining ongoing royalties, Infringing Products shall be defined as: "those computer monitors and televisions that were accused at trial, and those that are not colorably different from the computer monitors and televisions that were accused at trial, with respect to the infringed claims."

### b.   Timing and Frequency of Reports and Payments

Both Mondis and Innolux have requested that the Court specify the frequency and timing of ongoing royalty reports and payments.   Innolux proposes quarterly reports and payments that are due 60 days after the close of each quarter, which is the standard practice in the Eastern District of Texas.   *Paice L.L.C. v. Toyota Motor Corp.*, Case No. 2:04-cv-211-DF, 2006 U.S. Dist. LEXIS 61600 (E.D. Tex. August 16, 2006); *Creative Internet Advertising Corp. v. Yahoo! Inc.,* 674 F. Supp.2d 847, 862 (E.D. Tex. 2009) (ordering defendant Yahoo to make quarterly payments for ongoing royalty payments); *see also z4 Tech., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 444 (E.D. Tex. 2006) (requiring Microsoft to file quarterly reports indicating the number of infringing units sold).

Mondis seeks a monthly schedule, with both the report and payment due 30 days from the close of each month.   Mondis contends that such a schedule is justified by "press reports from Taiwan [that] show that Innolux is in financial trouble and that it is in urgent debt restructuring

talks." (Dkt. No. 23, Exh. A2) ("'The latest T$5.6 billion [debt] is a lot of money to Chimei.   If it repaid the whole debt, its liquidity would become very tight,' the [Ministry of Economic Affairs] official said.")  Mondis further seeks a monthly reporting schedule based upon its belief that Innolux intends to transfer its monitor business to a corporate affiliate, Hon Hai.   In sum, Mondis argues that a confluence of rapidly evolving circumstances justifies a shorter reporting period.

After carefully considering the parties' arguments, the Court finds that the facts and circumstances of this case do not warrant a deviation from this District's established practice of requiring quarterly reporting.   The process of compiling and preparing sales reports is time-consuming, and the Court is concerned that imposing a monthly reporting obligation on Innolux would be unduly burdensome.   Moreover, Innolux has committed that it will inform Mondis of any material change in circumstances related to its monitor or television business, which is sufficient to mitigate any prejudice that Mondis may suffer due to Innolux's possible sale of its monitor business to Hon Hai.   The Court does believe, however, that the facts and circumstances of this case do warrant condensing the typical 60 day reporting and payment window after the close of each quarter to 30 days.   Therefore, the Court orders that payments and reports will be due on or before 30 days after the close of each quarter.   Further, Innolux is ordered to provide notice to Mondis of any material change to its business of importing or selling televisions and/or computer monitors within 14 days of such change becoming known to Innolux.

### c.   Prejudgment Interest on Supplemental Damages

In a September 30, 2011 Memorandum Opinion and Order, the Court awarded Mondis $1,971,810 in supplemental damages for the first two quarters of 2011 (the "Supplemental Damages"). (Dkt. No. 1, at 13.)   The parties dispute whether prejudgment interest should be

---

2 *Taiwan's Chimei Innolux Seeks Govt Aid to Extend Loans,* published January 11, 2012 accessed from http://www.reuters.com/assets/print?aid=USL3E8CB3PY20120111, last accessed on January 23, 2012.

assessed on that Supplemental Damages award.   Mondis argues that because the Court specifically awarded prejudgment interest on the initial $15 million jury verdict, logic and common sense require an award of prejudgment interest based on the same interest rate on the supplemental damages.   Innolux contends that prejudgment interest is not warranted because the Court previously declined – inherently in its September 30, 2011 Order – the opportunity to award Mondis prejudgment interest on the Supplemental Damages award and because Mondis never sought reconsideration of that decision.

After considering the parties written submissions and the Supplemental Damages Order, the Court finds that the previous order of September 30, 2011 did not consider or take up the question of whether prejudgment interest should be awarded.   The Order awarding Supplemental Damages could have specifically taken up the issue by explaining whether prejudgment interest were, or were not, included in the Supplemental Damages award.   It did not.   This silence indicates that the Court acting on September 30, 2011 did not reach the question of prejudgment interest and whether it should be assessed with regard to the Supplemental Damages award.   Now turning to the question of prejudgment interest, the Court finds that such interest should be applied to the Supplemental Damages award.

Prejudgment interest was previously established on the underlying $15 million jury verdict by calculating interest using the 90 day commercial paper rate and conceptualizing the verdict as a lump-sum award.   Mondis proposes that prejudgment interest on the Supplemental Damages be calculated in exactly the same fashion.   Innolux disagrees and argues that if prejudgment interest is awarded, it should be calculated on a running royalty and not a lump sum basis.

An award of supplemental damages is simply recognition that, at the time the verdict was entered, the jury did not have access to all of the sales data.   From a conceptual standpoint, the

Supplemental Damages awarded on September 30, 2011 are no different than the $15 million jury award.   Such Supplemental Damages simply recognize that if the jury had the benefit of real-time sales data when it reached its verdict, it would have included such supplemental damages ($1,971,810) as part of its December 31, 2007 lump-sum award.   Accordingly, the Court holds that prejudgment interest on the Supplemental Damages should be calculated on the full $1,971,810 (conceptualized as a lump-sum) from December 31, 2007 through the date of this Order.

In the Court's August 30, 2011 final judgment, the Court awarded $560,847 in prejudgment interest on the damages award of $15,000,000.   Using this same formula, the prejudgment interest on the supplemental damages award of $1,971,810 that accrued from December 31, 2007 through August 30, 2011 is found to be $73,725.   The Court further awards additional prejudgment interest at the annual rate of 0.57%, which is an average of the monthly average data for the A2/P2 Nonfinancial 90-day commercial paper rate for the period of October 2011 to March 2012.   This additional prejudgment interest, accrued from September 1, 2011 through April 30, 2012, amounts to $7,442.

### d.  Taiwanese Tax Withholding

The parties also dispute whether the final judgment should specifically require Innolux to satisfy the judgment "without any reductions or withholdings."   Innolux finds this language problematic because it is required, according to its understanding of Taiwainese tax law and the double-taxation treaty between the United Kingdon (Mondis' domicile) and Taiwan (Chimei TW's domicile), to withhold a 20% tax on all royalty payments, with Mondis being entitled to a 50% refund of such withheld taxes.   (Dkt. No. 32, at 9.)

8

One of the two Innolux entities in this suit is a United States corporation, and the jury award runs against both Defendants jointly and severally.  This Court has previously held that where foreign and U.S. entities are jointly and severally liable, U.S. judgments must be paid in full, regardless of foreign withholding taxes.  *See QinetiQ Ltd. v. Samsung Telecomms. Am., L.P.*, No. 2:03-cv-22, 2005 U.S. Dist. LEXIS 47881 (E.D. Tex. Sept. 7, 2005).

The Court reaches the same conclusion here.   This is a U.S. case involving infringement of U.S. patents and one of the two Defendants is a U.S. company that is jointly and severally liable for all sums awarded.   Based on these facts, the Court does not permit the withholding of any portion of the supplemental damages award or royalty payments based on the tax laws of Taiwan or any other foreign government.   Accordingly, the final judgment entered by this Court will require that all payments due thereunder shall be made in full in United States dollars and delivered in the United States, without reductions or withholdings of any kind.

### e.  Successors-and-Assigns Language

The parties dispute whether the ongoing royalty obligation should extend to Innolux's successors and assigns.   Neither Mondis nor Innolux have cited authority where another Court has specifically found that supplemental royalties do or do not extend to the payers successors and assigns.   At least one of the parties contends in its briefing that this is a matter of first impression.[3]

Innolux claims that ongoing royalties cannot extend to successors and assigns and notes that several courts have ruled that an ongoing royalty rate is specific to a particular defendant and the relationship between that plaintiff and defendant – suggesting that an ongoing royalty rate would not survive to benefit a non-party successor and/or assign.   Innolux cites a recent case that

---

[3] "CMI has been unable to locate any case law or other authority on this issue."   (Dkt. No. 32, at 16.)

notes the importance of the relationship between the parties themselves in setting ongoing royalties:

> The Federal Circuit has made it clear that damages for past infringement are separate and distinct from damages for future acts of infringement and may require different royalty rates given the change in the parties' legal relationship, among other factors.

*Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 623-24 (E.D. Tex. 2009).   Innolux also contends that when this Court previously entered its order for ongoing royalty payments and enhanced the ongoing royalty rate, it did so with respect to Innolux and Innolux alone.   Innolux argues that "[g]iven the specificity of the *Read* factors and their applicability to a particular defendant it would be impossible, not to mention highly unjust, to apply them to any entity that had not been a party to this litigation."   (Dkt. No. 32, at 18.)

Mondis reasons that ongoing royalties are equitable in nature and a form of injunctive relief.   In support, Mondis notes that Federal Rule of Civil Procedure 65(d) explicitly contemplates not only orders prohibiting specified acts (*i.e.*, an injunction against further manufacture of infringing goods), but also orders *requiring* affirmative acts.   *See* Fed. R. Civ. P. 65(d)(1)(C); *cf. Black's Law Dictionary*, 349 (2d Pocket Ed. 2001) (defining "injunction" as "[a] court order commanding or preventing an action," and "mandatory injunction' as "[a]n injunction that orders an affirmative act or mandates a specified course of conduct").

There is no question that the Court's injunctive power under Federal Rule of Civil Procedure 65(d) extends to those in privity with an infringing defendant, including its successors and assigns.   *See, e.g., Power-One, Inc. v. Artesyn Techs., Inc.*, No. 05-cv-463, 2008 U.S. Dist. LEXIS 30338, *10 (E.D. Tex. Apr. 11, 2008) ("As the Supreme Court and Federal Circuit have noted, injunctions may survive the dissolution of a corporation at which the injunction is directed, and will continue to bind any successors in interest to the original defendant.") (quoting *Additive*

10

*Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1351 (Fed. Cir. 1998)).   The

Federal Circuit has specifically recognized that including "successors in interest and assigns" in an

injunction is appropriate where, as here, the defendant intends to sell items used to manufacture

infringing products.   *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1581-83 (Fed. Cir.

1986), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana

Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).   In *Kloster*, the defendant sold its assets to a non-party

prior to entry of judgment and a permanent injunction.   The district court included language in the

injunction binding the defendants and their "successors in interest and assigns."   *Id.* at 1569,

1581.   The Federal Circuit affirmed, over the objection of the non-party successor, noting that

"[c]ourts have repeatedly found privity where, after a suit begins, a nonparty acquires assets of a

defendant-infringer."   *Id.*, at 1583.

     Accordingly, the Court must address whether or not the basis for an ongoing royalty is

derived from the injunction power of Rule 65.   After carefully considering the issue, the Court

finds that it does.   "Injunctive relief" is not limited to prohibitions against manufacture and sale.

The Supreme Court has explicitly rejected the argument that application of Rule 65 is limited to

prohibitory injunctions:

> A short answer to petitioners' argument might appear to be that,
> because the Board's supplemental order to All American required
> only reinstatement and backpay, and not that All American cease
> and desist from future unlawful activity, no injunctive relief was
> ordered, and therefore Rule 65(d) need not be considered.   But we
> have previously found Rule 65(d) applicable to mandatory
> injunctions and have noted that the court of appeals have applied it
> "not only to prohibitive injunctions but to enforcement orders and
> affirmative decrees as well."

*Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 178 n.4 (1973) (quoting *Int'l Longshoremen's

Assn. v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 75 & n.14 (1967)).   In many cases,

injunctions include or govern a requirement of monetary payment. *See Innogentics, N.V. v. Abbott Labs*., 512 F.3d 1363, 1381 & n.9 (Fed. Cir. 2008) (vacating permanent injunction in patent infringement case under *eBay*, and remanding to the district court to enter "[a]n injunction delineating the terms of the compulsory license," and noting that such a compulsory license could "clearly condition[] the future sales of the infringing products on payment of the running royalty.")

For these reasons, the Court is persuaded that an award of ongoing royalties is equitable in nature and exists as a form of injunctive relief that may properly extend to successors and assigns. While this Court recognizes that applying ongoing royalties to successors and assigns may conflict to some degree with the principle that royalties are dependent upon the specific positions and bargaining power of the parties, the Court believes that the alternative of adopting a blanket rule that ongoing royalty payments terminate when an infringer changes legal status or sells a portion of its business would eviscerate the purpose of ongoing royalties as a remedy in lieu of a prohibitory injunction.  Otherwise any adjudicated infringer could simply spin-off or sell its infringing line of business to a competitor and completely avoid that infringing line of business' obligation to pay ongoing royalties.  The failure to extend ongoing royalties to successors and assigns would in practice make them a nullity, and every first year law student knows that the law abhors a nullity and demands that such be avoided wherever possible.

Because the ongoing royalties requirement is an equitable remedy and a form of injunctive relief, it is governed by Federal Rule of Civil Procedure 65(d), and will bind Innolux and any persons or companies who are in active concert or participation with Innolux, as well as the successors and assigns of Innolux's computer monitor and/or television business.

### f.   Discovery Provisions

Mondis asks this Court to allow additional discovery pursuant to Fed. R. Civ. P. 69(a)(2) on two discrete issues: (1) the amount of ongoing royalties owed to Mondis and (2) the effect of an anticipated transaction involving the computer monitor and television business of Innolux. Innolux counters that the request for additional discovery should be rejected because (1) it is not timely; (2) it exceeds the scope of allowable discovery; (3) Mondis had a full and fair opportunity to conduct discovery during the four-year pendency of fact discovery in the 565 case; (4) Mondis' newly-requested discovery is unnecessary in view of the evidence and serves only to improperly burden the Court and Innolux; and (5) Mondis' request seeks information and a ruling in its favor when a real party in interest – Hon Hai – is excluded from the process.

The purpose of Rule 69 discovery is to identify assets from which a judgment may be satisfied.   Fed. R. Civ. P. 69(a)(2); *British Int'l Ins. Co. v. Seguros La Republica*, 200 F.R.D. 586, 589 (W.D. Tex. 2000).   Here, Mondis seeks discovery related to additional products that it would like to include in the on-going royalty base (Innolux's panels), the business relationship between Innolux and Hon Hai, and the wind-down of Innolux's assembly business.   The Court finds that these topics are not related to assets from which a judgment may be satisfied (pursuant to Rule 69), but rather relate to entirely new claims.   Accordingly, Mondis' request for additional discovery is denied.

### g.   Stay the Court's Ongoing Royalty Award and Posting of Bond

Fed. R. Civ. P. 62 governs the issuance of a stay delaying the execution of a judgment.   A party taking an appeal from the district court is entitled to a stay of any money judgment, "as a matter of right," upon posting a supersedeas bond sufficient to secure the judgment.   *Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theaters, Inc.,* 87 S. Ct. 1, 3 (Harlan, Circuit Justice

13

1966).   In this case, however, the parties dispute whether Rule 62 applies in the context of ongoing royalties.

The Federal Circuit recently ruled that Rule 62 does indeed apply to an award of ongoing royalties.   *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 2011-1538, 2012 U.S. App. LEXIS 6764, at *5 (Fed. Cir. April 2, 2012) ("The fact that the district court regarded the requirement that Verizon make royalty payments during the six-month sunset period as a necessary condition for temporarily staying the injunction does not alter the fact that the royalty payments constitute monetary relief that is normally subject to Rule 62(d)").   In light of this guidance from the Federal Circuit, the Court hereby stays execution of the judgment pending appeal on the condition that Innolux post a supersedeas bond in compliance with Local Rule CV-62, within 21 days of this Order, stating unequivocally as a condition of the supersedeas that the bonding company will make payment in full in U.S. dollars to Mondis in the United States for the amount of ongoing royalties.

## III.   MOTION TO STAY ACTION IN LIGHT OF PARALLEL ITC INVESTIGATION (DKT. NO. 34)

On March 14, 2012, Innolux filed a motion seeking a stay of this action because Mondis initiated a Section 337 investigation at the International Trade Commission (ITC) against Innolux. (Dkt. No. 34.)   The parties dispute whether the circumstances of this case warrant a mandatory stay according to 28 U.S.C. § 1659(a).   The Court does not reach this question, however, because Innolux concedes, in its responsive briefing, that this Court may enter a final judgment if it does not grant Mondis' request for discovery or to allow Mondis to pursue new inducement and third-party liability theories asserted in Mondis' proposed judgment briefing.   (Dkt. No. 44.)   As described above, the Court denies Mondis an opportunity to pursue additional discovery in this

14

matter.   Accordingly, Innolux's Motion to Stay Action in Light of Parallel ITC Investigation is denied-as-moot.

## IV.   CONCLUSION

A Final Judgment consistent with this Opinion & Order is entered contemporaneously herewith.

**So ORDERED and SIGNED this 30th day of April, 2012.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE